Clifford F. Mack and Helen L. Mack v. Commissioner.
Mack v. Commissioner
Docket No. 5195-67.
United States Tax Court
T.C. Memo 1969-26; 1969 Tax Ct. Memo LEXIS 270; 28 T.C.M. (CCH) 123; T.C.M. (RIA) 69026; February 4, 1969, Filed Clifford F. Mack, pro se, 27161 Cranford, Dearborn Heights, Mich. James C. Lynch, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' income tax for 1964 in the amount of $12,275.28 and an addition to tax under section 6653(a), [1] in the amount of $613.76. The questions presented for decision are (1) whether petitioners are entitled to a deduction for 1964 under section 165(d) for wagering losses, and, if so, in what amount, and (2) whether the underpayment, if any, of petitioners' tax for 1964 was due to negligent failure to keep adequate records of the husband's gambling activities. *271 Findings of Fact Clifford F. Mack (hereinafter referred to as "petitioner") and Helen L. Mack, husband and wife, were legal residents of Dearborn Heights, Michigan, at the time their petition herein was filed. They filed their joint income tax return for 1964 with the district director of internal revenue, Detroit, Michigan. During 1964, Helen L. Mack operated a beauty shop in Dearborn Heights, Michigan, and reported on the 1964 return taxable income therefrom in the amount of $2,550.93. No question is here raised as to the accuracy of the report of such income. For some 20 years prior to 1962, petitioner was employed as a mechanic. He worked long hours and accumulated a substantial amount of property, including two airplanes, two boats, and some savings. In 1962, he was the victim of an automobile accident in which both of his legs were crushed. He was hospitalized and in traction for a year. For several months thereafter, he had casts on his legs and was required to use a wheel chair. During 1964, he received workmen's compensation disability benefits. While he was at home, disabled from his accident, friends took him to local racetracks for entertainment. He had wagered *272 on the outcome of races only rarely prior to his accident but, as a result of the visits to the racetracks while disabled, he became interested in racetrack gambling and attended racing meets almost daily during 1964, wagering heavily. On January 1, 1964, petitioner had a balance of $6,000 in a savings account with the Bank of Dearborn. On October 1, 1964, petitioner entered into a wager at the Detroit Race Course and won $48,555.40. He collected $41,272.15 on the wager, the rest being withheld for tax purposes, and on October 2, 1964, deposited this amount in the above savings account. On October 5, 1964, petitioner withdrew $30,000 from this account, which sum he concedes, was not used for wagering. He made other withdrawals during the remainder of 1964, and at the end of the year the account balance was $2,500. On June 26, 1964, petitioner opened a savings account with the National Bank of Detroit with a deposit of $6,750, the proceeds of an insurance claim for damages to one of his airplanes. Petitioner also made deposits in this account of $500 each on July 3, 1964, and July 8, 1964, and 124 $1,300 on August 17, 1964. By a series of withdrawals between July 8, 1964, and *273 September 8, 1964, the account balance was reduced to $1. No further deposits were made in this account during 1964. On January 1, 1964, petitioner had $213.26 on deposit in a checking account with the Bank of Dearborn. Deposits in this account were made at various times during 1964, in part from transfers from petitioner's savings accounts, and in part from other sources. During the months of August, September, and October 1964, he drew on this account 15 checks payable to the Detroit Race Course in the total amount of $10,000. The checks were approved for acceptance on behalf of the Detroit Race Course by an employee who was a longtime friend of petitioner. At the end of 1964, the balance in this account was $967.41. On their joint income tax return for 1964, petitioners reported "Gambling Winnings" of $48,555.40 and claimed a deduction of $27,200 for gambling losses, the difference of $21,355.40 as being shown as taxable income. In determining the deficiency herein, respondent disallowed the full amount of the claimed deduction of $27,200 for lack of substantiation. Petitioner sustained deductible net wagering losses of $14,000 during 1964, apart from the $48,555.40 won on *274 October 1, 1964. Opinion Petitioner contends that he suffered wagering losses of $27,200 in 1964. Respondent denies that petitioner has established this contention and argues that any wagering losses which petitioner did incur were offset by winnings other than the $48,555.40 reported on his return. The issue posed by these contentions of the parties is factual. In support of his position, petitioner asks us to compare his cash resources at the end of 1964 with his resources at the beginning of the year plus certain allegedly nontaxable amounts received during the year and the wagering proceeds which he reported as taxable income. He asserts that the difference between the two total figures represents his wagering losses. While petitioner's contentions were not systematically organized, our reconstruction of his argument may be summarized by the following table: Resources on January 1, 1964 Savings account, Bank of Dearborn
$ 6,000.00 of Dearborn 213.26 $ 6,213.26
Checking account, Bank of Dearborn 213.26
ui$.26
Plus Nontaxable Receipts Insurance proceeds depos- ited in National Bank of Detroit in June and July 1964
7,750.00
Loan proceeds deposited in National Bank of De- troit on August 17, 1964
1,300.00
Deposit in Bank of Dear- born, December 15, 1964
1,000.00 10,050.00
Plus Proceeds from Wager of October 1, 1964 Deposit in Bank of Dear- born, October 2, 1964
41,272.15
Less withdrawal from Bank of Dearborn, Oc- tober 5, 1964 30,000.00
11,272.15
Total
$27,535.41
Less Resources on December 31, 1964
Savings account, Bank of Dearborn $2,500.00 Less interest. 118.71 2,381.83
Checking account, Bank of Dearborn
967.41
Savings account, National Bank of Detroit 1.00
3,350.24
Wagering loss in 1964 $24,185.17
*275 Petitioner actually claimed a loss of $27,200. Petitioner testified that he received workmen's compensation payments during 1964 which he gave to his wife, and that she used such funds, together with the income from her beauty shop, to pay their living expenses. For this reason he has made no adjustment for personal expenses. We believe the trial record quite clearly shows that petitioner suffered substantial wagering losses. For example, he submitted 15 checks payable to the Detroit Race Course in the total amount of $10,000, drawn on various dates in August, September, and October 1964. He admitted that it was unusual for bettors to cash checks at racetracks, but explained that the checks were accepted on behalf of the Detroit Race Course by an official who was a long-time friend. His testimony, as well as records introduced into evidence, persuades us that he had wagering losses in addition to those documented by the checks. We do not think, however, that the evidence, by any means, substantiates the full amount of petitioner's claim. Under section 165(d) his wagering losses are 125 deductible only to the extent of the gains from such transactions. Although petitioner's *276 claimed wagering losses were sustained at various times during the year, he reported no wagering gains other than the $48,555.40 won on October 1, 1964. Petitioner admitted that he won other wagers during 1964, but he testified that he sustained corresponding losses which are not included in the amount claimed as a deduction here. We are not convinced that petitioner did not mistakenly include some of these "corresponding" losses in the claimed losses. Petitioner had the burden of showing that the funds used for making wagers were either on hand at the beginning of the year, or were acquired during the year from non-wagering sources. We do not believe he has done so. From the meager evidence presented, we are not persuaded that the two $500 deposits on July 3 and July 8, 1964, in the National Bank of Detroit and the $1,300 deposit in the same account on August 17, 1964, were derived from non-wagering sources. While petitioner testified that the two $500 deposits represented insurance proceeds, he gave no explanation of the kind of insurance involved or the manner in which he became entitled to these proceeds. Similarly, he testified that the $1,300 was part of the proceeds of a $4,300 *277 loan, but he gave no details of the transaction - i.e., the lender, the reason for the loan, the security given, the repayment schedule, and the like - and we note that at the time of the purported loan petitioner had almost $9,000 in his savings accounts. The record is barren of any evidence of the character of the December 15, 1964, deposit of $1,000 in the Bank of Dearborn. Furthermore, on November 13, 1964, the sum of $5,000 was withdrawn from the Bank of Dearborn account and petitioner testified that the racetracks closed about the middle of November. Such a large withdrawal, we believe, required some explanation. Finally, as noted above, petitioner's computations of his losses make no adjustment for personal and living expenses. Although he was disabled and hence unemployed, his life was not devoid of luxuries. For example, he made a trip of at least six weeks' duration to Florida in February and March 1964; he withdrew $900 from his Bank of Dearborn savings account on February 3, 1964, and while in Florida cashed two $100 checks. We are not persuaded that his workmen's compensation payments coupled with the income received by his wife from the beauty shop were sufficient to *278 pay all of his living expenses. Using our best judgment in the light of the evidence before us, we have found that petitioner suffered net wagering losses of $14,000 in 1964, apart from the $48,555.40 won on October 1, 1964. See . This sum, being less than the determined gain from wagering, is deductible. Sec. 165(d). Although petitioner testified that he engaged in no business activity other than wagering on racing events, he maintained no formal records of his wagering transactions. While he argues that no records of gambling activities would have been acceptable to the Internal Revenue Service, we think that his negligent failure to document his transactions with adequate contemporaneous records resulted in the underpayment of his income for 1964. See . Accordingly, we conclude that the addition to tax under section 6653(a) must be sustained. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩